## Illinois Central Railroad Company v. A. H. Bowman & Company.

### (Decided February 22, 1927.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Landlord and Tenant—Evidence that Lessee's General Manager Permitted Lessor to Occupy Building Held Admissible in Action for Rent, Where Defense was Eviction by Refusal to Deliver Part of Leased Premises.—In action to recover agreed rental under lease, to which defense was that lessor had refused to deliver possession to part of premises, rejecting evidence that lessor's occupancy of office space was consented to by lessee's general manager held error.

2. Landlord and Tenant—Tenant Retaining Possession of Warehouse in which Lessor Refused to Deliver up Office Could Not Avoid Payment of Rent.—Tenant who went into possession of warehouse could not avoid payment of rent therefor under lease, because lessor refused to deliver up possession of office, where tenant accepted and retained possession of portion of leased premises; remedy being by counterclaim for pro rata value of premises retained by lessor based upon contract.

3. Landlord and Tenant—Dispossessing Tenant of Part of Leased Premises Deprives Landlord of Right to Recover Any Rent.—Eviction of tenant from part of leased premises by actual dispossession, or excluding him therefrom, deprives landlord of right to recover rents for any part of premises after eviction.

4. Landlord and Tenant—Rule that Landlord's Eviction of Tenant from Part of Premises Cuts Off Rent Does Not Apply Where Tenant Remains in Possession of Portion of Premises.—Rule that eviction of tenant from part of leased premises deprives landlord of right to recover rent does not apply, where there is only partial eviction of part of leased premises by virtue of tenant's remaining in possession of other part.

5. Landlord and Tenant—Remedy of Lessee Remaining in Possession After Lessor has Refused to Deliver Portion of Premises is by Counterclaim for Pro Rata Value of Premises Retained by Lessor.—Where landlord has refused to deliver part of leased premises to tenant, who nevertheless goes into possession of portion of premises, tenant has remedy in action for rent by assertion of counterclaim for pro rata value of premises retained by lessor based on contract.

TRABUE, DOOLAN, HELM & HELM for appellant.

ALLEN P. DODD and J. L. ROBERTS for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

On the first day of June, 1922, the Illinois Central Railroad Company executed a lease to A. H. Bowman & Company covering all that portion of the building of the lessor known as the First Street Freight House, located on the southeast corner of First and Water streets in the city of Louisville. By the terms of the lease it was to remain in force from the first day of June, 1922, until the first day of June, 1923, unless sooner terminated in accordance with its provisions. The rentals were $208.34 per month in advance. The lessee by the terms of the lease was to receive the property in the condition in which it was at the time and agreed to make all necessary repairs to same, roof excepted, and maintain it during the term of the lease at the expense of lessee. There was a provision in the lease that if it should be extended beyond the period of one year the lessee should pay rent at the rate of $2,800.00. The lessee was to use leased premises exclusively as a warehouse wherein should be handled only such articles appropriate to the indicated kind of business. Lessee was given the right to remove the partitions in the west end of the building. The lessor reserved the right to terminate the lease at any time by giving the lessee sixty days' notice of such intention.

There had been negotiations concerning this lease contract covering a period of several weeks, but it was finally agreed upon on the date it bears. After it was signed by the lessee, signed copies of the lease were mailed to the home office of the railroad company at Chicago and there retained in the files of the company until about the first of April, 1923. It was not actually signed by the railroad company until about the 23rd day of March, 1923, and a copy was not returned to the lessee until April 3rd. About June 1st, 1922, that is immediately after the lease was signed by the lessee, the lessee moved some property into the warehouse. At the time the lessor was still occupying the office in the west end of the leased premises. The office was occupied by one of the employees of the lessor, a Mr. McCord, and there was a clerk who assisted him and a janitor who looked after the office. Mr. McCord or the janitor retained the keys to the office. A door led from the office into the main warehouse room and on this door was a spring lock on the office side of the door. The employees of the railroad used this door in going into the main warehouse room to get coal for heating purposes, which was stored in the main room of the warehouse, and to reach the lavatory.

It is claimed by the lessee that soon after June 1st, it made demand upon the lessor for possession of the office space and the balance of the building. Lessee claims that at the time it made such demand it had been permitted to move into the center of the main warehouse building, but the lessor still retained possession of the office and had stored in the east end of the building certain materials and supplies consisting of timber and railroad iron. Whether the lessee demanded possession of the lessor of the part of the leased premises retained by the lessor or whether lessor retained possession of a part of the leased premises with the consent of the lessee is one of the main questions involved in the suit. Lessee claims that it continued to make demands upon lessor for possession of the space retained by the lessor throughout the year 1922. In the latter part of December, 1922, the lessee put a lock on the door leading from the office into the main warehouse room so that the employees of lessor would have to unlock the door rather than use the spring lock.

Lessee claims that it intended to use the premises leased by it as a warehouse room, but owing to the fact that it could not get possession of the office and the further fact that the keys were in the possession of the employees of the railroad company it was not safe for the lessee to store goods in the warehouse unless it provided a watchman to guard the goods, and that by reason of these conditions lessee was not able to take storage prior to December, 1922. Lessee also claims that as it could not get a copy of the lease from the railroad company it was not in position to take any steps to oust the lessor from that portion of the premises which it had not delivered. It is not shown, however, that the lessee made any effort to get a copy of the lease returned to it until the winter of 1923.

The evidence shows that nothing much happened in the way of a controversy between the lessor and the lessee until the last day of February, 1923, when the lessor for the first time sent a bill to the lessee for ten months' rent. Several letters passed between the lessor and the lessee, and a reading of these letters discloses that lessee was probably more concerned about whether the lease would be extended than it was about the failure of the lessor to deliver complete possession of the leased premises to it. In fact lessee agreed to pay the rent in one of the letters provided the lessor would renew the lease for another year.

In January, 1923, it appears that one of the employees of the railroad company, a Mr. Breckinridge, earnestly argued with lessee that it should rent all of its space in the warehouse to Heaton and Fisher, and there was a suggestion that if lessee did not furnish space to Heaton and Fisher that lessor would not extend the contract. Lessee did not look kindly upon the suggestion and this disagreement precipitated the controversy. The lease was not canceled by lessor although it had the right to cancel it at any time by giving sixty days' notice. At the end of the term the lease was not renewed.

The lessee refused to pay the rentals and the lessor instituted this suit to recover the rents, amounting to $2,500.08. The lessee interposed its answer in two paragraphs. In the first paragraph it denied that it ever obtained possession or control of the warehouse and in the second paragraph it pleaded that the lessor had

wholly failed and refused to deliver possession of the premises leased to appellee and that the lessor had retained 25% of the space in said warehouse for its own use and had retained the keys which enabled it to enter the premises. Lessee also sought to recover damages in a counterclaim and set-off in the sum of $2,885.00.

The proof shows that the lessee took possession of a portion of the leased premises about the first of June and occupied that portion of which it had possession during the period of the lease. There was no dispute over the fact that the lessor retained possession of the office during the entire period of the lease. The lessee shows by its evidence that it demanded possession of the part of the leased premises retained by the lessor, although the evidence on this point is not voluminous. The witnesses for lessor do not deny outright that demand was made for the possession of the office, but state that they have no recollection of any such demand. The lessor claims that it retained possession of the office with the consent of the lessee and offered to prove that a Mr. Moffett, who was the general manager of lessee, had consented for the lessor to continue to occupy the office space at the west end of the building for its yard clerk and to keep certain records on the shelves on the second floor over the office until such space should be needed by the lessee. The court sustained objections to this evidence, and that was error. The lessor should have been allowed to show, if it could, that it retained possession of the office with the consent of the lessee. In view of the conclusions we have reached, however, this is not material except in so far as it shows that the lessor was not acting in bad faith. Moffett was the general manager of lessee and had charge of its warehouse business. He was instrumental in negotiating the lease contract and it was competent to show that he allowed the lessor to retain possession of the office.

The action is based upon the contract and seeks to recover the entire amount of rents due under the terms of the contract. If the lessee accepted the possession of a portion of the leased premises and used and occupied that portion of the leased premises which it so accepted, it became responsible for the full amount which it had agreed to pay, but was entitled to credit on that amount by the proportionate rental value of that portion of the leased premises which was retained by the lessor.

It is argued by counsel for appellee that because the railroad company failed and refused to deliver the entire possession of the leased premises to appellee, the appellant cannot recover any portion of the rents as the contract was entire, and the failure of appellant to deliver possession of any portion of the leased premises to appellee deprived it of the right to recover the rents. This argument appears to be based upon the idea that the refusal of appellant upon demand to deliver the entire possession of the leased premises to appellee constituted an eviction of appellee on the part of appellant of that part of the premises which it refused to turn over and in law an eviction of the whole of the premises, and for that reason appellee cannot be called on to pay any part of the rent.

The decisions of the courts in all the jurisdictions are well nigh uniform that an eviction of a tenant of any part of the leased premises by actually dispossessing or excluding him therefrom by the landlord deprives the landlord of his right to recover rents for any part of the premises after the eviction. A partial eviction will relieve the tenant from paying the whole of the rent so long as the tenant is kept out of the possession of such part. Hanser v. Romer, 4 Ky. L. R. 815; Davis v. Lamb, 12 Ky. L. R. 685; Ventura Hotel Co. v. Pabst Brewing Co., 128 S. W. 292.

This is not a case, however, where there was a partial eviction of the tenant from a portion of the leased premises. At the time the tenant entered into the possession of the leased premises it knew that the lessor had possession of a portion of the premises. The lessee could have refused to accept any portion of the leased premises unless the entire warehouse was turned over to it and the lessor would have been without remedy, but when a tenant goes into possession of a portion of the leased premises and accepts and retains possession of a portion of the leased premises he becomes responsible on the rental contract for the rents specified in the contract and is entitled to credit only by the *pro rata* value of the premises retained by the lessor based upon the contract.

The authorities in other jurisdictions are not in harmony on this question and respectable authority can be found supporting the contention of appellant as well as that of appellee. We prefer to adopt the principles governing such cases set forth by McAdam in his work

on Landlord and Tenant, 3rd edition, vol. 1, pages 344 and 345, as follows:

"The true rule seems to be:

"1. That if the tenant, by any wrongful act or neglect of the landlord, cannot get possession of the whole subject of the demise, he is not bound to accept a part thereof; and he may decline to take part, and plead the landlord's wrongful act or neglect in defense of any action the landlord may bring to recover for rent.

"2. If, however, the tenant accepts part, he enters under the demise and is liable on his covenant for the whole rent (unless the covenant to pay is made dependent on receiving possession of the whole).

"3. The tenant's remedy is to recover his damages arising from the failure to receive full possession, either by way of counterclaim to the original action for rent, or by way of an independent action, as was done in Hexter v. Knox, *supra.* (42 N. Y. Super. Ct. 10).

"The practical result is that the landlord, on the one hand, receives as rent all the tenant agreed to pay, while the tenant, on the other hand, recovers as damages a sum sufficient to make good his loss. In this way the obligations of the parties are fully satisfied by compensation fixed upon legal principles."

We believe the foregoing contains the correct principles governing cases of this nature and by following this rule justice will be done to both parties. It would be manifestly unjust to allow a tenant to accept and retain a portion of the leased premises and at the end of the term refuse to pay any rentals because there was a portion of the leased premises which he had not used. Accepting the contention of appellee that appellant refused to deliver to it the office in June, 1922, it had the option at the time of turning back that portion of the leased premises which it had accepted and in that way avoiding the payment of rents, and it would have had a remedy against the appellant for its refusal to carry out the contract. It must not be allowed to use a portion of the premises for the full period covered by the contract and then refuse to pay the rents called for in the

contract. It is fully protected after having retained possession of a portion of the leased premises if the appellant is required to pay to the appellee the rentals on the portion of the premises which it withheld.

Judgment is reversed for proceedings consistent with this opinion.